# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| MARESSE GRAVES, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 14-1310-JDT-egb |
| | ) | |
| CHERRY LINDAMOOD, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

ORDER DISMISSING CLAIMS,
DENYING MOTION TO HOLD DEFENDANTS LIABLE FOR
PLAINTIFF'S SAFETY & CARE (ECF NO. 8),
DENYING MOTION NOT TO BE PLACED IN IC UNIT (ECF NO. 9),
DENYING MOTION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 10),
DENYING MOTION FOR PRELIMINARY INJUNCTIVE ORDER (ECF NO. 11),
DENYING MOTION FOR ORDER TO HOLD DEFENDANT LIABLE (ECF NO. 13),
DENYING LEAVE TO AMEND,
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH,
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On November 13, 2014, Plaintiff Maresse Graves ("Graves"), who was formerly an inmate at the Whiteville Correctional Facility ("WCF") in Whiteville Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On November 14, 2014, this Court ordered Graves to comply with 28 U.S.C. § 1915(a)(2) or pay the civil filing fee. (ECF No. 4.) In response, Graves filed a new motion to proceed *in forma pauperis* on December 3, 2014. (ECF No. 5.) In an order issued July 16, 2015, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.) The Clerk shall record the defendants as WCF Warden Cherry Lindamood, WCF Case Manager

Ms. First Name Unknown (FNU) Jackson, Tennessee Department of Corrections ("TDOC") Commissioner Derrick Schofield, WCF Inmate Classification Coordinator Mrs. FNU Trotter, WCF Unit Manager Mrs. FNU White, WCF Prison Librarian Mr. FNU Gray, WCF Assistant Warden Robert Adams, and TDOC Assistant Commissioner of Operations Jason Woodall, who was sued as "J. Woodall".

I  The Complaint

Graves complains that Defendants are being deliberately indifferent to his personal safety by their failure to place him in protective custody, that he is being denied access to the courts, and that there has been a failure to train, supervise, and manage employees  (Comp. 3, ECF No. 1.)

Graves alleges that his life is in imminent danger due to a monetary hit put on his life by the Crips gang. (*Id.* at 5.)  Graves states that he was a member of the Crips gang, but after he filed a lawsuit about prison conditions, some Crips gang member put a hit on his life. (*Id.* at 7.) When Graves arrived at WCF, which is managed by Corrections Corporation of America ("CCA"), he told Defendant White as well as the following people, who are not a party to this lawsuit: Case Manager Fuller, Case Manager Cross, and Chief of Unit Manager Mitter, that there was a monetary gang hit placed on his life. (*Id.* at 5.)  Graves informed the aforementioned people that he could not live in his assigned compound and he needed to be immediately placed in protective custody. (*Id.*)  Graves states that he was moved from Unit H to Unit I. (*Id.*) Graves was in the general population for seven months. (*Id.*)

Graves alleges after the seven months, he began to overhear inmates saying that he was going to be jumped and stabbed. (*Id.*)  On October 3, 2014, Graves went to medical and requested protective custody. (*Id.*)  Graves states that he was placed on Protective Custody

Investigation where Defendant Jackson was the hearing officer. (*Id.*) Graves alleges that he informed Defendant Jackson about the monetary hit, but she refused to look at Graves's documents provided with his statement. (*Id.* at 6.) Graves was denied protective custody. (*Id.*) Graves states that he refused his cell assignment due to his life being in danger and was written up for refusing the cell assignment; regardless, he was moved to a cell which was not protective custody. (*Id.*)

From October 15, 2014, to October 31, 2014, Graves states that he spoke with Defendants Lindamood, Trotter, and White about his need for protective custody, but he was not placed in protective custody. (*Id.*) Graves alleges that on October 15, 2014, he submitted an emergency inmate grievance describing his issues and the need for protective custody. (*Id.*) Graves further alleges that Officer Pruitt, who is not a party to this lawsuit, opened the letter without his permission. Then Officer Pruitt gave an unnamed inmate two pieces of Graves's outgoing mail causing a rumor to start that he was snitching. (*Id.* at 6-7.)

Graves states that at the end of October 2014, he and other unnamed inmates were told that they were being moved to IC unit. (*Id.* at 7.) Graves alleges that he told Sergeant Amos, who is not a party to this complaint, and all the other Defendants, except for Defendant Schofield, that he could not be moved to that place because his life is in danger. (*Id.*) Graves states that he was feeling depressed and hopeless causing him to cut himself in a suicide attempt resulting in his being placed in medical. (*Id.* at 7.)

Graves states that he cannot live or be housed in the general population, and he has told all the defendants, expect for Defendants Schofield and Woodall. (*Id.*) Graves further provides that there are a lot of Crips gang members in Unit IC and the WCF in general and that he has received two disciplinary reports for refusing cell assignments. (*Id.* at 8.) Graves also alleges

3

that there have been rumors about his sexual orientation causing sexual predators to come after him. (*Id.*)

Graves further alleges that around October 18 through 22, 2014, he requested a § 1983 complaint form, but was not given one by Defendant Gray which resulted in his having to write his complaint by hand. (*Id.*) Graves states that he is being prohibited to follow court procedures. (*Id.*)

Graves seeks a preliminary and permanent injunction placing him in segregation restrictive housing, moving him into protective custody with no cellmate until relocated to another prison, stopping all attempts to place him in the WCF general housing or IC Unit, and transfer to another prison; an order that defendants not hinder his access to the courts; and a removal of the two cell assignment disciplinary reports. (*Id.*)

## II. Analysis

A. <u>Screening and Standard</u>

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)   is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2)   seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-

pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners

are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  <u>§ 1983 Claim</u>

Graves filed his eleven page handwritten complaint pursuant to actions under 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

1. *Mootness*

After the filing of the complaint, Graves submitted a change of address showing that he is now incarcerated in West Tennessee State Penitentiary ("WTSP"). (ECF No. 54.) Therefore, Graves's prayer for temporary and permanent injunctive relief concerning his protective custody status at WCF, in which he seeks immediate transfer to protective custody or transfer to another prison, are moot. *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003) (claims for declaratory and injunctive relief against prison staff moot when inmate transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same); *Tramber v. Pleasant*, No. 4:12CV-P31-M, 2012 WL 4594339, at *5 (W.D. Ky. Oct. 2, 2012) (inmate's claim for a transfer and medical care moot when he was transferred to another facility). The change of residence also serves to render Graves's Motion to Hold Defendants Liable for Plaintiff's Safety and Care (ECF No. 8.), Motion for Court Order Not to be Placed in IC Unit without Protective Custody Status (ECF No. 9.), Motion for Temporary Restraining Order and Rule to Show Cause (ECF No. 10.), and Motion for Preliminary Injunctive Order Prohibiting Defendants from Placing Plaintiff in IC Unit (ECF No. 11), and Motion for Court Order to Hold Defendants and Their Agents Liable for Plaintiff's Safety (ECF No. 13) be DENIED as MOOT.

2. *Twombly Standard Claims against Defendant Schofield*

7

The complaint contains no factual allegations against Defendant Schofield. When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

3.  *Claims against Defendants in their Official Capacity*

Graves is suing all Defendants in their official and individual capacity. Defendants Schofield and Woodall are employed by the TDOC. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). Any claims against Defendants Schofield and Woodall in their official capacity are asserted against the State of Tennessee.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, ___ U.S. ___, ___, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State.") (citations omitted). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01.

Tennessee has not waived its sovereign immunity. Tenn. Stat. Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

Graves sues CCA employees Defendants Jackson, Trotter, White, Gray, and Adams in their individual and official capacity. The official capacity claims against these CCA employees must be construed as claims against CCA itself. *Cf. Will*, 491 U.S. at 71. However, the complaint does not assert a valid claim against CCA. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)); *see also Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (corporation that provides medical care to prisoners can be sued under § 1983). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Thomas*, 55 F. App'x at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001). CCA "cannot be held liable under a theory of respondeat superior." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Instead, to prevail on a § 1983 claim against CCA, Graves "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Id.* The complaint does not allege that Graves suffered any injury because of an unconstitutional policy or custom of CCA

4. *Protective Custody Claims*

Graves believed that his life was endangered by his cell assignment in IC Unit and in the WCF general population due to the alleged hit on his life by gang members. His complaint, however, fails to articulate a credible threat that had been made to Graves. This Court cannot

issue orders based on mere theoretical probabilities and the facts as alleged show no harm to Graves. The complaint does not allege any deliberate indifference on the part of any defendant. The Supreme Court has repeatedly observed that prisons present an "ever-present potential for violent confrontation." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (quoting *Jones v. No. Car. Prisoner's Labor Union, Inc.*, 433 U.S. 119, 132 (1977)). *See also*, *Wolff v. McDonnell*, 418 U.S. 539, 561-62 (1974) (prisons are populated by violent offenders, causing unremitting tension among inmates and between inmates and guards).

This Court does not have the authority to supervise classification and assignment of inmates. An inmate does not have a protected right to be assigned to a particular prison, security classification, or housing assignment. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976); *Montanye v. Haymes*, 427 U.S. 236 (1976). *See Sandin v. Conner*, 515 U.S. 472, 484-87 (1995) (confinement in particular part of prison or jail does not implicate due process absent "atypical and significant hardship" "in relation to the ordinary incidents of prison life").

Graves did not suffer any injury from his residence at WCF or in IC Unit. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Peck v. Mortimer*, 650 F.2d 929, 930 (8th Cir. 1981); *see Forbes v. Trigg*, 976 F.2d 308, 312 (7th Cir. 1992) (dismissing as moot habeas petition because petitioner had been released from segregation); *Thompson v. Smith*, 719 F.2d 938, 940-41 (8th Cir. 1983) (dismissing as moot habeas petition alleging harassment because petitioner was transferred to another prison). Plaintiff must show "a reasonable expectation or a demonstrated probability that the same controversy will recur." *Id. See Thompson v. Smith*, 719 F.2d 938 (8th Cir. 1983); Peck v. Mortimer, 650 F.2d 929 (8th Cir. 1981); *Willis v. Ciccone*, 506 F.2d 1011 (8th Cir. 1974) (all holding moot a conditions of confinement challenge because the

prisoner was no longer confined in the allegedly offending institution). Graves does not allege any facts that would support a claim of reasonable expectation or demonstrated probability that this same controversy will recur.

     5.    *Claims for Issuance of Disciplinary Reports*

Graves also has no claim for a violation of due process in connection with the issuance of disciplinary reports. Graves attached the disciplinary reports from October 14, 2014, and October 25, 2014, both stating that Graves refused his cell assignment. (Compl. 1 & 4, ECF No. 1-2.) Graves states in his complaint that he refused his cell assignment. (Compl. 6, ECF No. 1.) An inmate's right to due process arises only if a restriction implicates a constitutionally protected liberty interest. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that, where a prisoner is charged with a disciplinary offense that may result in loss of good time credit, due process requires certain procedural protections. *Id.* at 563-66. In addition, a disciplinary proceeding may give rise to a protected liberty interest if the restrictions imposed constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). In general, an inmate does not have a liberty interest in a particular security classification or in freedom from segregation. *Olim v. Wakinekona*, 461 U.S 238, 245 (1983). In this case, Graves's own documentation shows that he received a disciplinary report for actions he took. There are no allegations that he did not refuse the cell assignment. Any loss of good time credit or punishment received was not the type of "atypical and significant hardship" contemplated in *Sandin*.

     6.    *First Amendment Claims*

Graves asserted that his access to the court has been restricted; however, the complaint does not assert a valid claim for denial of Graves's First Amendment right of access to the courts. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts."). The Supreme Court has held that

> "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828. However, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see also Hadix*, 182 F.3d at 405-06 (explaining how *Lewis* altered the "actual injury" requirement previously articulated by the Sixth Circuit). "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The complaint does not allege that Graves suffered any actual injury as he was able to file this complaint, proceed *in forma pauperis*, and file numerous other motions.

### III. Standard for Leave to Amend

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

### IV. Appeal Issues

Pursuant to 28 U.S.C. §1915(a)(3), the Court must also consider whether an appeal by Plaintiff in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants, but has sufficient merit to support an appeal *in forma pauperis*.

*See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

V. Conclusion

The Court DISMISSES Graves's complaint as to all Defendants for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b(1). Leave to Amend is DENIED because the deficiencies in Graves's complaint cannot be cured. It is also CERTIFIED, pursuant to 28 U.S.C. §1915(a)(3), that any appeal in this matter by Graves would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Graves nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, 28 U.S.C. § 1915(a)-(b). Therefore, Graves is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in *McGore* and § 1915(a)(2) by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Graves, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This "strike" shall take effect when judgment is entered. *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

    **s/James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE